[Crim. No. 18044. First Dist., Div. Four. Apr. 19, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CULTON, Defendant and Appellant.

COUNSEL

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHRISTIAN, J.—Robert Culton appeals from a judgment of imprisonment which was rendered after jury trials had resulted in verdicts finding him guilty of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd.(a)), rape (Pen. Code, § 261, subd. 3) and second degree robbery (Pen. Code, § 211).

Appellant visited at night the apartment of the victim, a pregnant young woman whose "old man" appellant knew was in jail. After some general conversation appellant suggested that he be substituted in the status of "old man." The victim refused, whereupon appellant slapped her and began to push her against the bed. The victim tried to get away but appellant kicked her several times and then raped her. Appellant took $40 from the victim's purse and departed.

The victim suffered bruises, abrasions, and a deep laceration which required suturing. The treating physician believed that the victim's nose had been broken.

When appellant was arrested he said that the victim had given him $40 to get a lawyer for her old man. He claimed that the victim had voluntarily had intercourse with him, and denied injuring the victim. At trial he gave a different version of events, testifying that after the intercourse there had been an argument and that he had struck the victim with his fist after she had kicked him.

The first trial resulted in a verdict finding appellant guilty of felonious assault (Pen. Code, § 245, subd.(a)), and not guilty of burglary. The jury disagreed as to the other charges.

When further trial on the rape and robbery counts was being set, defense counsel announced to the court that appellant wanted "a court-appointed attorney of his choice other than the Public Defender's

Office." Counsel asked for permission for appellant to address the court himself:

"THE COURT: All right, Mr. Culton?

"DEFENDANT CULTON: I think that I am inadequately being defended by the Public Defender's Office, and I don't think that I'm getting a proper defense out of that office, and I would like an attorney of my choice.

"THE COURT: Okay, the motion is denied."

■ Appellant contends, citing *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44], and related authorities, that the court denied the request for new counsel without adequate inquiry concerning the factual basis of the request. The contention is not supported by the record. The judge did not rule without permitting appellant to state his reasons for wanting new counsel. On the contrary, the judge explicitly invited appellant to speak. Appellant's statement was not interrupted; it was only after appellant had ceased speaking that the court denied the motion. The true question is whether appellant's statement offered any substantial grounds which called for further inquiry by the court. The above quoted statement related dissatisfaction, but gave no hint of any factual grounds for that dissatisfaction. It was not error to deny the motion to appoint new counsel. (Cf. *People* v. *Huffman* (1977) 71 Cal.App.3d 63 [139 Cal.Rptr. 264]; *People* v. *Earl* (1973) 29 Cal.App.3d 894, 900 [105 Cal.Rptr. 831]; *People* v. *Fitzgerald* (1972) 29 Cal.App.3d 296, 308 [105 Cal.Rptr. 458]; *People* v. *Jacobs* (1972) 27 Cal.App.3d 246, 262 [103 Cal.Rptr. 536].) *People* v. *Munoz* (1974) 41 Cal.App.3d 62 [115 Cal.Rptr. 726], is to be distinguished. There the defendant stated a substantial ground for displeasure with the activities of appointed counsel: "You don't want to fight the case. I tell him the way it happened, and he — he tells me, 'You are guilty; you ain't got a chance.' What kind of a defense do I have, if I listen to him?" (41 Cal.App.3d at p. 64.) In the face of this specific charge that appointed counsel was unwilling to perform his assigned role of advocacy, the attorney remained silent. The charge obviously related to private conversations between client and counsel, not to courtroom activities of which the court could have knowledge. Yet the judge denied the request for new counsel without any inquiry. Here, in contrast, the statement which appellant made at the court's invitation contained nothing indicating that inquiry might substantiate any ground for bringing in new counsel. There is no holding in *Marsden,* or in *Munoz,* that where a defendant offers no

reasons in support of his declaration that he is dissatisfied with his appointed attorney it is the responsibility of the judge to interrupt the proceedings and catechize the defendant.

*People* v. *Hidalgo* (1978) 22 Cal.3d 826 [150 Cal.Rptr. 780, 587 P.2d 230], and *People* v. *Lewis* (1978) 20 Cal.3d 496 [143 Cal.Rptr. 138, 573 P.2d 40], cited by appellant, are similarly to be distinguished on the basis that in both the request for appointment of new counsel was denied without giving the defendant an opportunity to state the reason for the request; indeed the court prevented the defendant from stating his reasons. Here, in contrast, the court invited appellant to speak and heard him out without interruption.

■ Citing *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], appellant challenges the findings of the jury that both the rape and the robbery were accompanied by great bodily injury. The court correctly instructed the jury, along lines suggested in CALJIC No. 17.20, that with respect to both counts, "great bodily injury" refers to "significant or substantial bodily injury or damage." The findings of the jury were well supported by evidence that the victim's nose had been broken and that she had suffered a deep cut which required suturing. The Attorney General has properly conceded that only one enhancement for great bodily injury is possible. (See *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].) The judgment must be modified accordingly.

■ Appellant contends that Penal Code section 654 precludes further trial on the rape and robbery counts after he had been sentenced on the verdict of the first jury finding him guilty of felonious assault. This contention cannot be sustained. The judgment pronounced on the first verdict was preliminary in nature, and was subject to modification. When all counts had been disposed of, in order for the court to pronounce a judgment which avoided double punishment, the court did appropriately stay the assault count to meet the requirements of section 654. In accepting the verdict on the assault count and then impanelling a new jury to try the two counts on which there had been jury disagreement, the court proceeded in compliance with the applicable statute (see Pen. Code, § 1160).

The judgment is modified to provide that appellant shall serve only one additional period of confinement for inflicting great bodily injury on the victim. As so modified, the judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I respectfully dissent.

Appellant was allowed to make a 36-word motion which set forth his view:

(a) that he was being inadequately defended,

(b) that he was not getting a proper defense, and

(c) therefore that he wanted to be represented by an attorney of his choice. That motion was immediately answered with an even more succinct denial of four words.

As happened in *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], the trial judge viewed the motion as a complaint relating to the quality of defense counsel's courtroom defense. The problem is that the defendant's complaints (i.e., "being inadequately defended . . . not getting a proper defense") are susceptible not only of the interpretation that what was going on in the presence of the judge amounted to an inadequate defense but that there were matters outside the knowledge of the trial court that gave rise to this motion. In that regard, the reasoning of the Supreme Court in *Marsden* (at pp. 123-124) more than suggests that there is a duty of inquiry: "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, 'when inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy' [citations]. Thus a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, *despite a defendant's offer to relate specific instances of misconduct,* abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' [Citations.]" (Italics added.)

The language to which emphasis has been added in the above quotation constitutes the legitimate area of disagreement. The question is whether the rule in *Marsden* is simply: don't "cut off" a defendant's attempt to explain his reasons for wanting new counsel or whether that decision's rationale imposes a duty on the trial judge to carefully inquire into the reasons a defendant has for making his motion. If the former equation is the proper rule then the judgment should be affirmed; if the latter, then the judgment must be reversed because *Marsden* error is prejudicial per se. (*People* v. *Lewis* (1978) 20 Cal.3d 496 at p. 499 [143 Cal.Rptr. 138, 573 P.2d 40].) I adopt the view stated in *People* v. *Munoz* (1974) 41 Cal.App.3d 62 at p.66 [115 Cal.Rptr. 726]:"The *Marsden* court was presented with an extreme situation. However, the mandate of that decision is not limited necessarily to a case where the trial judge refuses to give the defendant the opportunity to be heard as the Attorney General suggests. On the contrary, the *ratio decidendi* of the high court's opinion tells us that the judge's obligation to listen to an indigent defendant's reasons for claiming inadequate representation by court-appointed counsel is not a pro forma function. It tells us also that under some circumstances a court's ruling denying the request for a substitution of attorneys without a careful inquiry into the defendant's reasons for requesting the substitution 'is lacking in all the attributes of a judicial determination.' (See *People* v. *Groce,* 18 Cal.App.3d 292, 296-297 . . . ; *People* v. *Green,* 15 Cal.App.3d 524, 527. . . .)"

A petition for a rehearing was denied May 4, 1979, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 14, 1979. Bird, C. J., Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.